LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Blvd., Ste. 310
Woodland Hills, CA 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

GEORGE M. ROSENBERG,
A PROFESSIONAL CORPORATION
George M. Rosenberg, Esq. (SBN 62570)
George@Rosenberg-LawFirm.com
12100 Wilshire Blvd., Suite 1250
Los Angeles, CA 90025
Telephone: (310) 207-0703
Facsimile: (310) 207-0787

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA BRIONES and MAURICE BRIONES, in each case individually and as a successor in interest to Kyle Briones, deceased,<br><br>              Plaintiffs,<br><br>      vs.<br><br>CITY OF ONTARIO; STAFFORD CROSS, MIKE GONZALEZ, MICHAEL MORA, DARRYL BROWN, KYLE MORGAN and DOES 6-10, inclusive,<br><br>              Defendants. | Case No. 5:17-cv-00590-DMG-JPR<br><br>**PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' PROPOSED STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT; PLAINTIFFS' ADDITIONAL UNCONTROVERTED MATERIAL FACTS**<br><br>Date: May 18, 2018<br>Time: 2:00 p.m.<br>Crtm.: 8C (First St. Courthouse) |

## **PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS; PLAINTIFFS' ADDITIONAL UNCONTROVERTED MATERIAL FACTS**

Pursuant to Local Rule 56-2, Plaintiffs respectfully submit their responses and objections to Defendants' Statement of Uncontroverted Facts and Plaintiffs' Additional Uncontroverted Material Facts. Defendants' Statement of Uncontroverted Facts (Dkt. # 39-1) was lodged on April 6, 2018. Plaintiffs hereby refute each of Defendants' "Conclusions of Law" respond to Defendants' Conclusions of Law within Plaintiffs' Memorandum of Points and Authorities filed concurrently herewith.

DATED: April 20, 2018                         LAW OFFICES OF DALE K. GALIPO

                                        By:     /s/ Renee V. Masongsong
                                                Dale K. Galipo
                                                Renee V. Masongsong
                                                Attorneys for Plaintiffs

1

2

3

4

5

6

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|-----|---------------------------------------------------------|----------------------------------------------|
| 1. | After 1:00 a.m. on October 5, 2016, Ontario Police officers received a call reporting a possible solo-vehicle traffic collision with a man in the driver's seat, unconscious, and the engine still running. Dep. of Michael Mora ("Mora Dep.") at 19:5-9; Ex. 4 at 01:19:39-01:20:44. Relevant pages of the Mora Dep. at attached as Ex. "A" to the Decl. of Daniel S. Roberts ("Roberts Decl.") | Objection: vague as to time. Disputed as to "unconscious." Ex. 2 to Masongsong Decl. (Morgan Depo.) at 13:14-18 (testifying that he had information that Mr. Briones was conscious); Ex. 3 to Masongsong Decl. (Cross Depo.) at 16:4-6 (testifying that he had no information that Mr. Briones had temporarily lost consciousness); Ex. 4 to Masongsong Decl. (Brown Depo.) at 43:14-16. |
| 2. | When the first officer arrived, he found Mr. Briones's car well off the road in the middle of a dirt field. Mora Dep. at 19:23-20:10; Ex. 1. | Undisputed. |
| 3. | Upon arriving to Mr. Briones's car, the officer observed Mr. Briones with his eyes closed, slumped over | Undisputed. |

| | | |
|---|---|---|
| | the steering wheel, possibly unconscious.<br>Mora Dep. at 22:7-15. | |
| 4. | The officer attempted to wake Mr. Briones by tapping on his shoulder several times and saying something like "Sir. Sir, you need to wake up."<br>Mora Dep. at 22:16-21. | Undisputed. |
| 5. | Mr. Briones took approximately 10-20 seconds to respond to the officer's attempt to wake him.<br>Mora Dep. at 22:22-23:6. | Undisputed. |
| 6. | When he did wake up, he looked confused. Mora Dep. at 26:9-11. | Undisputed. |
| 7. | As officers led him away from the car (for safety reasons, because the vehicle was smoking), he appeared to be wobbly and unsteady on his feet.<br>Mora Dep. at 28:9-29:1. | <u>Disputed</u> that it was appropriate to remove Mr. Briones from the car. Clark. Decl. at<br><u>Disputed</u> that the car was smoking. Ex. 14 to Masongsong Decl. (Video) at 01:04-01:06 (an officer states that the car is steaming); Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 51:7-9. |
| 8. | Officer Mora had the opinion that Mr. Briones was drunk.<br>Mora Dep. at 31:7-10. | <u>Disputed</u> on the basis that it was unreasonable for Officer Mora to form the opinion that Mr. Briones was drunk. |

| | | | |
|---|---|---|---|
| 1 | | | The officers had no information that Mr. Briones was intoxicated, did not smell any alcohol, and did not see any evidence of alcoholic beverages. Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 33:15-17; Ex. 4 to Masongsong Decl. (Brown Depo.) at 43:7-9; Ex. 6 to Masongsong Decl. (Mora Depo.) at 29:2-3, 71:22-72:2; Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 26:4-15, 75:21-25; *see generally* Ex. 11 to Masongsong Decl. (Police Event); Clark Decl. at ¶12 |
| 9. | As officers were escorting him a safe distance away from the smoking car, he turned back and took a step or so toward the car. Mora Dep. at 29:10-30:9. | | Disputed on the basis that it was inappropriate to remove Mr. Briones from the car. Clark. Decl. at Disputed that the car was smoking. Ex. 14 to Masongsong Decl. (Video) at 01:04-01:06 (an officer states that the car is steaming); Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 51:7-9. Disputed to the extent that the officer's own self-serving testimony is the only evidence that Mr. Briones |

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' PROPOSED STATEMENT OF UNCONTROVERTED FACTS; PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| | | | |
|---|---|---|---|
| | | | turned back and took a step toward the car. |
| 10. | He refused officer requests to sit down on the ground, so officers pulled him to the ground to get him to stop. Mora Dep. at 33:18-24; Dep. of Mike Gonzales ("Gonzales Dep.") at 15:15- 16:3; 17:10-17:19. Copies of relevant page of the Gonzales Dep. are attached as Exhibit "B" to the Roberts Decl. | | <u>Disputed</u> that the officers had reasonable suspicion to detain Mr. Briones. The officers had no information that Mr. Briones had committed any crime, and when the officers arrived on scene, there was no crime in progress. Clark Decl. at ¶ 12, ¶ 22; Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 15:3-11; Ex. 3 to Masongsong Decl. (Cross Depo.) at 45:15-46:3. |
| 11. | Rather than sit down on the ground away from the smoking car so that the officers could investigate how he ended up passed out in his car in the middle of the field, and whether any crime was involved, Mr. Briones tried to get back up and struggled with officers. Mora Dep. at 34:15-35:8. | | <u>Objection</u>: compound; vague and ambiguous as to "struggle." <u>Disputed</u> that the car was smoking. Ex. 14 to Masongsong Decl. (Video) at 01:04-01:06 (an officer states that the car is steaming); Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 51:7-9 (testifying that the car was not smoking). <u>Disputed</u> on the basis that the officers had no reasonable suspicion to detain Mr. Briones. The officers had no information that Mr. Briones had committed any crime, and when the |

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' PROPOSED STATEMENT OF UNCONTROVERTED FACTS; PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| | | | |
|---|---|---|---|
| | | | officers arrived on scene, there was no crime in progress. Clark Decl. at ¶ 12, ¶ 22; Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 15:3-11; Ex. 3 to Masongsong Decl. (Cross Depo.) at 45:15-46:3.<br><br>Disputed that Mr. Briones was "struggling"—Mr. Briones only minimally resisted the restraints, and Mr. Briones never punched, kicked, hit, injured, or threatened anyone. Clark Decl. at ¶ 24, ¶ 25 |
| 12. | This struggle with officers began within approximately 35 seconds of the time Mr. Briones was able to rise out of his car. AXON_Flex_Video_2016- 10- 05_0124 at approx. 0:45 through 1:20. A disc containing a copy of the video is lodged with the Court and identified as Exhibit "C." | | Objection: compound; vague and ambiguous as to "struggle."<br><br>Disputed that Mr. Briones was "struggling"—Mr. Briones only minimally resisted the restraints, and Mr. Briones never punched, kicked, hit, injured, or threatened anyone. Clark Decl. at ¶ 24, ¶ 25 |
| 13. | Police and paramedics were both dispatched to the scene at the same time. Mora Dep. Ex. 4 at 01:19:05; Detailed History of for Fire Event | | Undisputed. |

| | | | |
|---|---|---|---|
| | | #F162790003, at 01:19:04. A copy of the Detailed History for Fire Event is attached as Exhibit "D" to the Roberts Declaration. | |
| | 14. | When the paramedics arrived to the scene, Mr. Briones was already struggling with the officers. Mora Dep. Ex. 4 at 01:25:55 ("SUBJ COMBATIVE"), 01:26:28 ("TASER DEPLOYED"); Detailed History for Fire Event (Ex. D) at 01:27:11 ("*ONSCN"). | Objection: Vague and ambiguous as to "struggle" and vague and ambiguous as to time. Disputed that Mr. Briones was "struggling"—Mr. Briones only minimally resisted the restraints, and Mr. Briones never punched, kicked, hit, injured, or threatened anyone. Clark Decl. at ¶ 24, ¶ 25 |
| | 15. | As soon as Mr. Briones was fully restrained, making it safe to do so, officers signaled for the paramedics to come over from their staged position. AXON_Flex_Video_2016- 10-05_0124 (Ex. C) at approx. 7:30-8:00. | Objections: compound; vague and ambiguous as to time; vague and ambiguous as to "officers"; vague and ambiguous as to "fully restrained." Disputed on the basis that Mr. Briones was unresponsive after he was handcuffed, and the paramedics were staged for approximately an additional 3 to 4 minutes after Mr. Briones was handcuffed. Ex. 14 to Masongsong Decl. (Video) at 05:29, 07:54, 08:03, 09:12; Ex. 17 to |

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' PROPOSED STATEMENT OF UNCONTROVERTED FACTS; PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| | | | Masongsong Decl. (Match-Action) at 05:29, 07:54, 08:03, 09:12; Ex. 2 to Masongsong Decl. (Morgan Depo.) at 30:3-9, 40:1-10, 45:15-46:16, 48:19-49:10 (testifying that he thought Mr. Briones was faking being passed out); Ex. 3 to Masongsong Decl. (Cross Depo.) at 61:9-18); Ex. 10 to Masongsong Decl. (Cross Statement) at 13:11-13 (stating that all the fight went out of Mr. Briones after he was handcuffed), 14:11-13; Ex. 4 to Masongsong Decl. (Brown Depo.) at 50:6-20 (testifying that Mr. Briones suddenly went calm), 55:19-25; Ex. 11 to Masongsong Decl. (Police Event) at page 2 1:29:27, 1:32:40; Ex. 12 to Masongsong Decl. (Pre-hospital Care Report) at page 2, "Patient Vitals." |
| 16. | Once they were able to get Mr. Briones handcuffed, and even before they were able to get his legs restrained, the officers were discussing whether he could breathe | Objections: compound; calls for speculation as to whether Mr. Briones was breathing; vague and ambiguous as to time. |

| | | | |
|---|---|---|---|
| | | (they believed he could) and whether he had a pulse (they believed he did). AXON_Flex_Video_2016- 10-05_0124 (Ex. C) at approx. 6:53-7:22. | <u>Disputed</u> that Mr. Briones was breathing. Ex. 14 to Masongsong Decl. (Video) at 05:29-0:9:12 (showing that Mr. Briones was unresponsive); Ex. 17 to Masongsong Decl. (Match-Action) at 05:29-09:12. The snoring sound that Mr. Briones made was an agonal (near death) sound. O'Halloran Decl. at ¶ 27. |
| 17. | | Sergeant Cross even told his officers "I want to make sure we don't smother him." AXON_Flex_Video_2016- 10-05_0124 (Ex. C) at approx. 6:53-7:02. | <u>Objection</u>: vague as to time. Undisputed. |
| 18. | | The only facts Plaintiffs claim to have to show that a final policy maker for the City knew of and specifically approved a subordinate's constitutional violation in this case are that "There is no evidence in this case that the individual officer defendants were disciplined, fired, or retrained in response to their conduct with this incident. There is no evidence that a final policy | <u>Disputed</u>. Ex. 6 to Masongsong Decl. (Mora Depo.) at 96:2-17. Following the incident with Mr. Briones, the OPD did not provide or facilitate any discussions, debriefing, or retraining with respect to not putting weight on a subject's back and not leaving a subject in a prone position for an extended period of time. *See also* Clark Decl. at ¶ 38; |

| | | | |
|---|---|---|---|
| 1 | | maker disapproved of the conduct of any of the individual officer defendants with respect to this incident or found their conduct to be out of policy." Pl. Cynthia Briones's Response to City's Interrogatory No. 5. Copies of relevant pages of Cynthia Briones's Interrogatory Responses are attached to the Roberts Decl. as Exhibit "E." | |
| 13 | 19. | The only facts Plaintiffs have to show that the City's training policies were inadequate as they relate to the allegations in this case are that the "manner in which the officers restrained [Mr. Briones] is contrary to basic police training, Peace Officer Standards and Training ("POST") and written City of Ontario Police Department Policy." Pl. Cynthia Briones's Response to City's Interrogatory No. 7 (Ex. "E"). | Disputed. Subsequent to the service of Plaintiff's interrogatory responses, the parties conducted the deposition of Detective Darryl Lauritzen, the person the City of Ontario designated as the most knowledgeable to speak on the subject of OPD training with respect to training and policies on restraints, including handcuffing and hobbling, and positional and restraint asphyxia. The OPD does not train its officers that even before a person is handcuffed, restraining a person chest down for a prolonged period of time |

with weight on his back could affect the person's ability to breathe. Ex. 15 to Masongsong Decl. (PMK Depo.) at 37:16-23.

The OPD does not have any written training materials specifically pertaining to positional or restraint asphyxia and does not train its officers that positional or restraint asphyxia can occur. Ex. 15 to Masongsong Decl. (PMK Depo.) at 25:8-11, 26:12-15, 35:1-6, 35:14-24.

The City does not train its officers with respect to the "physiology of a struggle," in other words, that if a person is chest down with weight on his back, the person could be attempting to lift up to assist in their breathing, and the officer perceives this as resistance and pushes the person back down. Ex. 15 to Masongsong Decl. (PMK Depo.) at 29:1-31:3.

Officer Mora does not recall receiving any training from the OPD that even if the subject is not hobbled, if the subject is in a prone position for

| | | |
|---|---|---|
| | | a prolonged period of time, that could interfere with the subject's ability to breathe. Ex. 6 to Masongsong Decl. (Mora Depo.) at 91:17-21 Officer Mora does not recall receiving any training on positional or restraint asphyxia from the OPD. Ex. 6 to Masongsong Decl. (Mora Depo.) at 89:2-25. |
| 20. | Defendant Mora graduated from a POST-certified police academy. Mora Dep. (Ex. "A") at16:15-24. | Undisputed. |
| 21. | Defendant Gonzales graduated from a POST-certified police academy. Gonzales Dep. (Ex. "B") at 20:20-24. | Undisputed. |
| 22. | Defendant Cross graduated from a POST-certified police academy. Dep. of Stafford Cross ("Cross Dep.") at 11:25- 12:8. Copies of relevant pages of the Cross Dep. are attached as Ex. "F" to the Roberts Decl. | Undisputed. |
| 23. | Defendant Morgan graduated from a POST-certified police academy. | Undisputed. |

| | | |
|---|---|---|
| | Dep. of Kyle Morgan ("Morgan Dep.) at 10:13- 11:4. Copies of relevant pages of the Morgan Dep. are attached as Ex. "G" to the Roberts Decl. | |
| 24. | Defendant Brown graduated from a POST-certified police academy. Dep. of Darryl Brown ("Brown Dep.") at 16:1-2; 19:5-20:14. Copies of relevant page of the Brown Dep. are attached as Ex. "H" to the Roberts Decl. | Undisputed. |
| 25. | Plaintiffs have no evidence outside the incident at issue in this case to support the existence of any of the unconstitutional policies alleged in paragraph 80 of their Second Amended Complaint. Pl. Maurice Briones's Responses to City's Interrogatories 1, 3, 7, 9, 11, 13, 15, 17, 19, and 21. Copies of relevant pages of Maurice Briones's responses to the City's Interrogatories are attached as Ex. I to the Roberts Decl. | Disputed. The OPD does not have any written training materials specifically pertaining to positional or restraint asphyxia and does not train its officers that positional or restraint asphyxia can occur. Ex. to Masongsong Decl. (PMK Depo.) at 25:8-11, 26:12-15, 35:1-6, 35:14-24. *See also* Clark Decl. at ¶ 37. |
| | **Plaintiffs' Additional Material Facts** | **Plaintiffs' Supporting Evidence** |

| Background of the Incident | | |
|---|---|---|
| 26. | Officer Gonzales is 5' 8" and 186 lbs. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 19:9-13. |
| 27. | Officer Morgan is 6' 1" and 185 lbs. | Ex. 2 to Masongsong Decl. (Morgan Depo.) at 9:12-18. |
| 28. | Sgt. Cross is 5' 7" and weighed approximately 205 pounds at the time of the incident. | Ex. 3 to Masongsong Decl. (Cross Depo.) at 30:15-31:12. |
| 29. | Officer Brown is 5' 10" and weighed approximately 215 pounds at the time of the incident. | Ex. 4 to Masongsong Decl. (Brown Depo.) at 13:11-19 |
| 30. | Officer Mora is 5' 10" and weighs 175 pounds. | Ex. 6 to Masongsong Decl. (Mora Depo.) at 15:1-3. |
| 31. | At the time of this incident, each officer defendant was wearing police equipment that added approximately twenty to thirty pounds to the officer's body weight. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 19:17-23; Ex. 3 to Masongsong Decl. (Cross Depo.) at 31:9-20;  Ex. 4 to Masongsong Decl. (Brown Depo.) at 74:4-24; Clark Decl. at ¶ 23. |
| 32. | Sultan Nshaiwat ("Mr. Nshaiwat" or "the RP") was driving on Archibald Ave. when he observed a vehicle in the middle of a ranch. | Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 15:21-25. |
| 33. | Mr. Nshaiwat called 911 and asked for an ambulance to respond right away. | Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 20:7-21:4. |

| | | | |
|---|---|---|---|
| | 34. | The call for service was put out as a "man down" and "medical assist" call. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 11:16-18, 17:6-9; Ex. 11 to Masongsong Decl. (Police Event) at 1:17:08, 1:18:58. |
| | 35. | Prior to arriving on scene, the officers had information that Mr. Briones needed some help, including medical attention. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 11:10-13, 11:18-19; Ex. 3 to Masongsong Decl. (Cross Depo.) at 51:11-14 (testifying that he understood, even before getting to the scene, that Mr. Briones might need some medical attention); Ex. 4 to Masongsong Decl. (Brown Depo.) at 42:18-21. |
| | 36. | Prior to arriving on scene, the officers knew that medical attention had been called for Mr. Briones because of the accident and that the paramedics were on their way. | Ex. 2 to Masongsong Decl. (Morgan Depo.) at 19:11-20; Ex. 3 to Masongsong Decl. (Cross Depo.) at 51:11-14; Ex. 6 to Masongsong Decl. (Mora Depo.) at 83:12-13. |
| | 37. | Prior to arriving on scene, the officers had information that Mr. Briones was bleeding. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 11:15-12:2; Ex. 11 to Masongsong Decl. (Police Event) at 1:18:58; Ex. 3 to Masongsong Decl. (Cross Depo.) at 15:18-25; Ex. 6 to Masongsong Decl. (Mora Depo.) at 19:7-9. |
| | 38. | Prior to Mr. Briones exiting the vehicle, the officers had no | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 15:3-11; Ex. 3 to |

| | | | |
|---|---|---|---|
| | | information that Mr. Briones had committed any crime. | Masongsong Decl. (Cross Depo.) at 45:15-46:3; Ex. 4 to Masongsong Decl. (Brown Depo.) at 29:18-21 |
| | 39. | The officers had no information that Mr. Briones was intoxicated. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 33:15-17; *see generally* Ex. 11 to Masongsong Decl. (Police Event). |
| | 40. | The officers had no information that Mr. Briones had a weapon. | See generally Ex. 11 to Masongsong Decl. (Police Event); Ex. 2 to Masongsong Decl. (Morgan Depo.) at 28:13-15; Ex. 4 to Masongsong Decl. (Brown Depo.) at 30:4-9 (testifying that he never saw a weapon in Mr. Briones' hands or on his person); Ex. 6 to Masongsong Decl. (Mora Depo.) at 29:4-6 (same); *see generally* Ex. 11 to Masongsong Decl. (Police Event). |
| | 41. | The officers did not know anything about Mr. Briones prior to this incident. | Ex. 2 to Masongsong Decl. (Morgan Depo.) at 16:9-11. |
| | 42. | The ground where this incident occurred was soft dirt. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 13:20-14:5; Ex. 2 to Masongsong Decl. (Morgan Depo.) at 28:1-5; Ex. 3 to Masongsong Decl. (Cross Depo.) at 31:24-32:4); Ex. 6 to Masongsong Decl. (Mora Depo.) at 30:21-23, 37:6-9. |

Case No. 5:17-cv-00590-DMG-JPR
PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' PROPOSED STATEMENT OF UNCONTROVERTED FACTS; PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| 43. | The officers and Mr. Nshaiwat described that their feet sank into the soft dirt, making it difficult to walk. | Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 17:14-16, 47:17-21; Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 13:20-14:5 (testifying that he sank into the dirt about two feet as he was approaching the vehicle and that the soft dirt almost caused Gonzales to fall); Ex. 2 to Masongsong Decl. (Morgan Depo.) at 28:1-5 (testifying that the surface was dusty and your feet would sink into it). |
| --- | --- | --- |
| 44. | There was dust in the air during this incident. | Ex. 2 to Masongsong Decl. (Morgan Depo.) at 28:1-5 (testifying that the surface was dusty); Ex. 3 to Masongsong Decl. (Cross Depo.) at 31:24-32:4) (testifying that there was dust in the air during the struggle). |
| 45. | At the time of this incident, traffic on Archibald Ave. was very light. | Ex. 7 to Masongsong Decl. (Wightman Depo.) at 30:3-5. |
| 46. | Mr. Briones was obese. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 61:5; Ex. 2 to Masongsong Decl. (Morgan Depo.) at 16:14-17; Ex. 3 to Masongsong Decl. (Cross Depo.) at 30:12-14. |
| **The Incident** | | |

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' PROPOSED STATEMENT OF UNCONTROVERTED
FACTS; PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| 46. | Mr. Nshaiwat told Officer Mora that Mr. Briones needed an ambulance. | Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 22:21-24. |
|---|---|---|
| 47. | The officers observed blood on Mr. Briones' face. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 16:7-9, 34:18-20, 43:13-21; Ex. 6 to Masongsong Decl. (Mora Depo.) at 26:4-8. |
| 48. | Neither the officers nor the RP smelled any alcohol on Mr. Briones or saw any evidence of alcoholic beverages. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 33:15-17; Ex. 4 to Masongsong Decl. (Brown Depo.) at 43:7-9; Ex. 6 to Masongsong Decl. (Mora Depo.) at 29:2-3, 71:22-72:2; Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 26:4-15, 75:21-25. |
| 49. | One of the officers who arrived after Officer Mora but before Sgt. Cross stated, "the mother fucker is drunk" as he approached the scene from approximately 20 feet away from Mr. Briones. | Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 29:5-20, 33:13-34:3. |
| 50. | The officers formed the impression that the solo-vehicle accident was serious. | Ex. 4 to Masongsong Decl. (Brown Depo.) at 44:9-11; Ex. 6 to Masongsong Decl. (Mora Depo.) at 27:7-12. |
| 51. | When Officer Mora first saw Mr. Briones, he thought he needed some medical attention because Mr. Briones had just been in a car | Ex. 6 to Masongsong Decl. (Mora Depo.) at 27:13-28:2, 83:6-8. |

| | | | |
|---|---|---|---|
| | | accident and was bleeding and confused. | |
| | 52. | Officer Mora instructed the RP to remove Mr. Briones' seatbelt. | Ex. 6 to Masongsong Decl. (Mora Depo.) at 21:13-17. |
| | 53. | Officers Mora and Gonzales pulled Mr. Briones out of the vehicle. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 12:15-24, 14:11-12 (testifying that he observed Officer Mora attempting to get Mr. Briones out of the vehicle and that he (Gonzales) assisted in moving Mr. Briones away from the vehicle); Ex. 2 to Masongsong Decl. (Morgan Depo.) at 17:5-8 (testifying that he observed Officers Mora and Gonzales assist Mr. Briones out of the vehicle); Ex. 6 to Masongsong Decl. (Mora Depo.) at 21:21-23, 25:1-12; Ex. 14 to Masongsong Decl. (Video) at 00:33-00:46. |
| | 54. | When the officers pulled Mr. Briones from the vehicle, there was no crime in progress. | Clark Decl. at ¶ 22. |
| | 55. | No witness or officer reported being threatened by Mr. Briones or seeing him with a weapons or reported being injured by Mr. Briones. | Clark Decl. at ¶ 22. |

| 56. | The officers never should have forced Mr. Briones to sit down and never should have handcuffed him. Both the detention and the scope and manner of the detention were unreasonable. | Clark Decl. at ¶ 22. |
|---|---|---|
| 57. | When Mr. Briones was pulled from the vehicle, he was incoherent and did not appear to understand where he was. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 36:15-17; Ex. 2 to Masongsong Decl. (Morgan Depo.) at 17:23-25 (testifying that Mr. Briones appeared "disoriented"); Ex. 4 to Masongsong Decl. (Brown Depo.) at 25:14-18 (testifying that Mr. Briones appeared out of it and disoriented); Ex. 6 to Masongsong Decl. (Mora Depo.) at 26:9-11 (testifying that Mr. Briones looked confused). |
| 58. | The officers formed the impression that Mr. Briones' vehicle was steaming. | Ex. 14 to Masongsong Decl. (Video) at 01:04-01:06. |
| 59. | Officer Brown formed the impression that Mr. Briones was disoriented because he had been injured from the accident. | Ex. 4 to Masongsong Decl. (Brown Depo.) at 29:21-25, 44:5-8. |
| 60. | Mr. Briones struggled to stand up and had difficulty walking after he was assisted out of the vehicle. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 15:12-14, 36:18-20; Ex. 2 to Masongsong Decl. (Morgan Depo.) |

| | | |
|---|---|---|
| | | at 17:19-22; Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 30:15-31:10. |
| 61. | After Mr. Briones was taken out of the car but before he was taken to the ground, Mr. Briones looked like he could pass out. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 52:16-23. |
| 62. | The symptoms Mr. Briones was displaying are consistent with Mr. Briones being disoriented and injured from an accident. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 36:15-37:3; Clark Decl. at ¶ 13;  Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 48:4-7. |
| 63. | It did not appear that Mr. Briones could have run away. | Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 47:4-21. |
| 64. | When Mr. Briones was removed from the vehicle, Mr. Nshaiwat perceived Mr. Briones to be in pain based on the sounds Mr. Briones was making. | Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 31:21-24. |
| 65. | Mr. Briones was initially cooperative. | Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 65:21-66:4. |
| 66. | The officer never should have forced Mr. Briones to sit down and never should have handcuffed him. Both the detention and the scope and manner of the detention were unreasonable. | Clark Decl. at ¶ 22. |

| 67. | Officer Gonzales pushed and kicked the back of Mr. Briones' knee to take him to the ground. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 18:8-12. |
|---|---|---|
| 68. | Officers Mora and Gonzales pulled Mr. Briones to the ground hard. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 15:24-25:1, 17:16 (testifying that he pulled Mr. Briones to the ground hard); Ex. 4 to Masongsong Decl. (Brown Depo.) at 25:19-26:16 (testifying that Officer Gonzales, along with Officer Morgan or Officer Mora, took Mr. Briones to the ground); Ex. 6 to Masongsong Decl. (Mora Depo.) at 30:20-31:6 (testifying that he pulled Mr. Briones backwards and that Mr. Briones did not go to the ground voluntarily). |
| 69. | After taking Mr. Briones to the ground, the officer defendants restrained him in a face and chest down position. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 26:20-25; Ex. 2 to Masongsong Decl. (Morgan Depo.) at 22:13-25:19; Ex. 4 to Masongsong Decl. (Brown Depo.) at 26:17-27:3; Clark Decl. at ¶ 20. |
| 70. | The officer defendants cuffed Mr. Briones' hands behind his back when Mr. Briones was in a prone (face and chest down) position. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 43:22-44:5; Ex. 2 to Masongsong Decl. (Morgan Depo.) at 22:13-23:4; Ex. 3 to Masongsong Decl. (Cross Depo.) at 27:22-24, |

| | | |
|---|---|---|
| | | 42:11-13;  Ex. 4 to Masongsong Decl. (Brown Depo.) at 30:16-32:5, 34:7-12;  Ex. 6 to Masongsong Decl. (Mora Depo.) at 49:22-50:1. |
| 71. | Mr. Briones was handcuffed at approximately 1:29:27 a.m. | Ex. 2 to Masongsong Decl. (Morgan Depo.) at 40:11-20 (testifying that "one detained" indicates that the subject has been handcuffed); Ex. 11 to Masongsong Decl. (Police Event) at page 2; Ex. 6 to Masongsong Decl. (Mora Depo.) at 72:19-73:11. |
| 72. | Approximately four minutes elapsed between Mr. Briones being taken to the ground and Mr. Briones being handcuffed. | Ex. 14 to Masongsong Decl. (Video) at 01:17-05:32; Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 41:3-6; Ex. 2 to Masongsong Decl. (Morgan Depo.) at 31:18-23; Ex. 3 to Masongsong Decl. (Cross Depo.) at 28:12-15; Ex. 4 to Masongsong Decl. (Brown Depo.) at 30:16-31:1, 34:7-12 (estimating 3-5 minutes). |
| 73. | Mr. Briones was screaming and groaning in pan during the time that the officers were handcuffing him. | Ex. 3 to Masongsong Decl. (Cross Depo.) at 32:5-7; Ex. 14 to Masongsong Decl. (Video) at 01:17-05:32; Ex. 2 to Masongsong Decl. (Morgan Depo.) at 40:1-10 (testifying that Mr. Briones had been yelling); |

Case No. 5:17-cv-00590-DMG-JPR
PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' PROPOSED STATEMENT OF UNCONTROVERTED FACTS; PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| | | | |
|---|---|---|---|
| | | | Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 40:17-41:9, 84:12-16. |
| 74. | It appeared to Mr. Nshaiwat that Mr. Briones was struggling in pain as opposed to resisting the force. | | Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 41:3-6. |
| 75. | Five officers—Brown, Gonzales, Cross, Morgan, and Mora—collectively held Mr. Briones down in a prone position. | | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 44:6-18, 47:7-8 (testifying that there were "hands everywhere"); Ex. 2 to Masongsong Decl. (Morgan Depo.) at 22:13-25:19 (testifying that Officers Mora and Gonzales were in physical contact with Mr. Briones, on either side of him, that Officer Brown was attempting to hold down Mr. Briones' feet, and Officer Morgan had his knee on Mr. Briones' lower back); Ex. 3 to Masongsong Decl. (Cross Depo.) at 23:4-6 (testifying that he saw four officers in contact with Mr. Briones when he arrived); Ex. 4 to Masongsong Decl. (Brown Depo.) at 27:4-29:11 (testifying that he (Brown) held down Mr. Briones' lower back while three officers were on either side of Mr. Briones attempting to handcuff him);  Ex. 1 to |

| | | |
|---|---|---|
| | | Masongsong Decl. (Nshaiwat Depo.) at 37:6-18, 89:12-18. |
| 76. | Mr. Nashaiwat stated that the officers were tough on Mr. Briones, including using the Taser against him, especially considering that Mr. Briones had just been in a car accident and could barely stand up. | Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 89:12-19. |
| 77. | During the restraint, both before and after the handcuffing, the officers placed weight on Mr. Briones to keep him from getting up or rolling onto either side. | Ex. 2 to Masongsong Decl. (Morgan Depo.) at 25:2-17, 29:7-10, 41:4-21 (testifying that he was trying to keep Mr. Briones from rolling or getting up, and observed the other officers doing the same; also testifying that he was trying to keep Mr. Briones flat on the ground; also testifying that he kept a hand on Mr. Briones after he was handcuffed even though he was no longer lifting up), 72:12-16 (testifying that he put weight on Mr. Briones to keep him from getting up); Ex. 4 to Masongsong Decl. (Brown Depo.) at 27:18-24 (testifying that the officers were trying to keep Mr. Briones down in a flat position). |
| 78. | During the time that the officers were holding Mr. Briones down in a | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 27:8-10; Ex. 2 to |

| | | | |
|---|---|---|---|
| | | prone position, before Mr. Briones was handcuffed, Mr. Briones attempted to lift his chest off the ground. | Masongsong Decl. (Morgan Depo.) at 28:22-25; Ex. 4 to Masongsong Decl. (Brown Depo.) at 27:11-17, 27:25-28:3, 33:5-8 (indicating that Mr. Briones was lifting his chest up); Ex. 6 to Masongsong Decl. (Mora Depo.) at 40:11-41:11. |
| | 79. | When Mr. Briones attempted to lift his upper body off the ground before he was handcuffed, Officers Gonzales, Brown, and Morgan used their strength and body weight to push Mr. Briones down on the ground. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 18:22-23, 25:5-8, 28:3-10, 30:17-21, 40:14-20 (testifying that he (Gonzales) was using his entire body and all of his strength to hold down Mr. Briones' arm and that he used his shoulder to push Mr. Briones back down); Ex. 2 to Masongsong Decl. (Morgan Depo.) at 29:1-13 (testifying that he was using his strength and body weight to keep Mr. Briones down on the ground, and observed the other officers doing the same); Ex. 4 to Masongsong Decl. (Brown Depo.) at 34:1-6 (testifying that the officers pushed Mr. Briones down); Ex. 4 to Masongsong Decl. (Brown Depo.) at 50:2-5 (testifying that he applied pressure to Mr. Briones to keep him from getting up); Ex. 6 to |

| | | |
|---|---|---|
| | | Masongsong Decl. (Mora Depo.) at 42:12-43:22 (testifying that he used all his strength), 47:14-22;  Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 93:7-19, 93:25-94:4. |
| 80. | The time period where Mr. Briones was trying to lift his chest up and the officers were trying to keep him down was approximately three to four minutes. | Ex. 6 to Masongsong Decl. (Mora Depo.) at 42:12-20, 47:14-22. |
| 81. | Mr. Briones was screaming, "ouch, ouch, ouch" during the minutes it took the officers to handcuff him. | Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 36:11-15. |
| 82. | Before Mr. Briones was handcuffed, Officer Morgan held Mr. Briones down in a prone position by placing his hand and a knee in the area of Mr. Briones' lower back or buttocks. | Ex. 2 to Masongsong Decl. (Morgan Depo.) at 24:12-25:1; 67:21-25 (identifying Ex. 28 to the deposition); Ex. 3 to Masongsong Decl. (Cross Depo.) at 24:2-25:8 (testifying that Officer Morgan was trying to hold Mr. Briones' legs down and may have been kneeling on Mr. Briones' legs). |
| 83. | Before Mr. Briones was handcuffed, Officers Mora and Gonzales prevented Mr. Briones from lifting his chest off the ground by removing Mr. Briones' hands from the ground | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 31:19-22 (testifying that he pulled Mr. Briones' arm out as hard as he could and drove Mr. Briones back into the ground); Ex. 6 to |

| | | | |
|---|---|---|---|
| | | and placing Mr. Briones' triceps in his hip. | Masongsong Decl. (Mora Depo.) at 41:21-25, 43:19-22, 48:24-49:4. |
| | 84. | Before Mr. Briones was handcuffed, Officer Brown held Mr. Briones down flat in a prone position by placing a hand on Mr. Briones' lower back. | Ex. 4 to Masongsong Decl. (Brown Depo.) at 27:4-10 (testifying that he tried to keep Mr. Briones flat on the ground), 28:4-10 (testifying that Mr. Briones was prone when he (Brown) had his hand on Mr. Briones' lower back). |
| | 85. | When Mr. Briones was lifting his chest off the ground, Officer Brown assisted Officers Mora and Gonzales in holding Mr. Briones' upper back down on the ground. | Ex. 4 to Masongsong Decl. (Brown Depo.) at 35:21-36:2. |
| | 86. | Officer Brown pushed Mr. Briones' head and neck down into the dirt and at the same time placed his right knee on Mr. Briones' right upper back area to keep Mr. Briones down and keep his head from lifting up. | Ex. 4 to Masongsong Decl. (Brown Depo.) at 36:16-37:10 (testifying that he used his knee to keep Mr. Briones down), 39:15-18 ("I knew if I would push his head down or neck down enough, along with my knee support, that would keep him down"), 40:5-12, 48:19-21; 49:12-16 (testifying he placed his hand on the back of the head and neck). |
| | 87. | During the time that Mr. Briones was restrained in a prone position on the ground, both before and after the | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 10-15; Ex. 2 to Masongsong Decl. (Morgan Depo.) at |

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' PROPOSED STATEMENT OF UNCONTROVERTED FACTS; PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| | | | |
|---|---|---|---|
| | | handcuffing, his face was down in the dirt. | 43:6-9, 45:4-7;  Ex. 4 to Masongsong Decl. (Brown Depo.) at 47:24-48:20. |
| | 88. | Officer Gonzales had trouble breathing during this incident because he was breathing in dirt. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 52:3-9. |
| | 89. | Prior to Mr. Briones being handcuffed, Officer Morgan Tased Mr. Briones for approximately 16 seconds. | Ex. 2 to Masongsong Decl. (Morgan Depo.) at 34:15-19; Ex. 16 to Masongsong Decl. (Taser Download) at page 13. |
| | 90. | Officer Morgan deployed the Taser in both probe mode and dry stun mode. | Ex. 2 to Masongsong Decl. (Morgan Depo.) at 36:12-37:3. |
| | 91. | Mr. Briones screamed when Officer Morgan Tased him. | Ex. 2 to Masongsong Decl. (Morgan Depo.) at 37:6-10. Ex. 14 to Masongsong Decl. (Video) at 01:59-02:33; Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at |
| | 92. | Sgt. Cross placed a knee in the area of Mr. Briones' lower back or buttocks. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 46:8-47:3. |
| | 93. | Sgt. Cross kneeled or stood on the back of Mr. Briones' legs for approximately one to two minutes. | Ex. 3 to Masongsong Decl. (Cross Depo.) at 48:8-50:6; Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 37:19-38:1, 44:17-45:24. |
| | 94. | Mr. Briones was in a prone (face and chest down) position when Sgt. | Ex. 3 to Masongsong Decl. (Cross Depo.) at 49:2-5; Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) |

| | | | |
|---|---|---|---|
| | | Cross was standing or kneeling on the back of Mr. Briones' legs. | at 36:1-10;  Ex. 10 to Masongsong Decl. (Cross Statement) at 16:19-17:4 |
| | 95. | When Mr. Nshaiwat saw Sgt. Cross standing on Mr. Briones' legs, he told Sgt. Cross that Mr. Briones might be in pain. | Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 36:11-18, 40:17-41:6. |
| | 96. | Sgt. Cross stood or kneeled on the back of Mr. Briones' legs in order to keep Mr. Briones down and so that Sgt. Cross could see over the other officers. | Ex. 3 to Masongsong Decl. (Cross Depo.) at 48:8-48:23. |
| | 97. | After Mr. Briones was handcuffed, when he was still chest down in a prone position, Mr. Briones suddenly stopped moving and appeared to be unresponsive. | Ex. 14 to Masongsong Decl. (Video) at 06:18 (showing Mr. Briones to be generally still and unresponsive); Ex. 17 to Masongsong Decl. (Match-Action) at 06:18; Ex. 2 to Masongsong Decl. (Morgan Depo.) at 30:3-9 (testifying that Mr. Briones was no longer trying to lift up after he was handcuffed), 40:1-10 (testifying that Mr. Briones stopped yelling about the time that he was handcuffed), 45:15-46:15, 48:19-49:10 (testifying that he (Morgan) thought Mr. Briones was faking being passed out); Ex. 3 to Masongsong Decl. (Cross Depo.) at 61:9-18 |

| | | | |
|---|---|---|---|
| | | | (testifying that Mr. Briones stopped resisting after he was handcuffed); Ex. 10 to Masongsong Decl. (Cross Statement) at 13:11-13 (stating that all the fight went out of Mr. Briones after he was handcuffed), 14:11-13; Ex. 4 to Masongsong Decl. (Brown Depo.) at 50:6-20 (testifying that Mr. Briones suddenly went calm and made a snoring sound), 55:19-25, 56:5-8, 57:5-7;  Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 91:22-92:9. |
| 98. | After Mr. Briones was already handcuffed, the officers continued to hold Mr. Briones down in a prone (face and chest down) position with their knees and hands. | | Ex. 14 to Masongsong Decl. (Video) at 05:26 (an officer is heard instructing other officers to keep holding him down) to 07:44 (showing hands on Mr. Briones' back); Ex. 17 to Masongsong Decl. (Match-Action) at 05:26-07:44; Ex. 2 to Masongsong Decl. (Morgan Depo.) at 41:4-24 (testifying that Mr. Briones was no longer pushing up, but he wanted to make sure Mr. Briones was not going to roll onto either side; also testifying that he held Mr. Briones down at the back of his left shoulder blade);  Ex. |

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' PROPOSED STATEMENT OF UNCONTROVERTED FACTS; PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| | | |
|---|---|---|
| | | 4 to Masongsong Decl. (Brown Depo.) at 71:4-7, 71:17-25; Ex. 6 to Masongsong Decl. (Mora Depo.) at 52:16-23 (testifying that he used his knees and hands to hold down Mr. Briones' legs after the handcuffing). |
| 99. | Officer Brown kept his knee on Mr. Briones' upper back even after Mr. Briones was handcuffed, up until the time that Mr. Briones was eventually turned onto his side. | Ex. 4 to Masongsong Decl. (Brown Depo.) at 45:13-18, 47:5-8, 71:4-7. |
| 100. | Approximately five minutes and thirty seconds after Mr. Briones was taken to the ground, after Mr. Briones had been handcuffed, the officer defendants questioned whether Mr. Briones could breathe. | Ex. 14 to Masongsong Decl. (Video) at 01:20, 06:54; Ex. 17 to Masongsong Decl. (Match-Action) at 01:20-06:54. |
| 101. | When the officers questioned whether Mr. Briones could breathe, Mr. Briones was still face and chest down. | Ex. 14 to Masongsong Decl. (Video) at 06:54; Ex. 17 to Masongsong Decl. at 05:57-06:54;  Ex. 2 to Masongsong Decl. (Morgan Depo.) at 42:6-10. |
| 102. | Sgt. Cross questioned whether Mr. Briones could breathe because of the position that Mr. Briones was in (face and chest down) on the ground. | Ex. 3 to Masongsong Decl. (Cross Depo.) at 50:21-51:4. |

| | | |
|---|---|---|
| 103. | The officers did not do anything to check whether Mr. Briones was breathing. | Ex. 6 to Masongsong Decl. (Mora Depo.) at 7:12-14; Ex. 3 to Masongsong Decl. (Cross Depo.) at 56:22-24. |
| 104. | Approximately one minute elapsed between the officer defendants questioning whether Mr. Briones could breathe and Mr. Briones being turned onto his side. | Ex. 14 to Masongsong Decl. (Video) at 06:54, 08:00; Ex. 17 to Masongsong Decl. (Match-Action) at 06:54-08:00. |
| 105. | The officer defendants applied a hobble to Mr. Briones when he was in a prone (chest down) position. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 49:14-19; Ex. 2 to Masongsong Decl. (Morgan Depo.) at 47:14-48:5; Ex. 6 to Masongsong Decl. (Mora Depo.) at 53:18-20; Ex. 14 to Masongsong Decl. (Video) at 06:36-07:37; Ex. 17 to Masongsong Decl. (Match-Action) at 06:36-07:37. |
| 106. | Mr. Briones did not kick his legs at any point after he was hobbled. | Ex. 6 to Masongsong Decl. (Mora Depo.) at 55:14-16, 64:21-23; Ex. 14 to Masongsong Decl. (Video) at 06:26-08:00; Ex. 17 to Masongsong Decl. (Match-Action) at 06:26-08:00. |
| 107. | After Mr. Briones was hobbled, Officer Mora stood with one foot on Mr. Briones' ankles and held the strap of the hobble tight for | Ex. 6 to Masongsong Decl. (Mora Depo.) at 54:6-55:16, 57:15-23 (indicating that Mr. Briones was face and chest down during part of the time that Officer Mora held the |

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' PROPOSED STATEMENT OF UNCONTROVERTED FACTS; PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| | | approximately 30 seconds, in case Mr. Briones woke up. | hobble and stood on Mr. Briones' ankles); Ex. 17 to Masongsong Decl. ("Match-Action") at 05:57-7:30. |
|---|---|---|---|
| | 108. | The paramedics arrived on scene at approximately 1:27 a.m. | Ex. 13 to Masongsong Decl. (Fire Event) at page 2. |
| | 109. | In this case, the paramedics were not permitted to treat Mr. Briones until they were given clearance by the officers. | Clark Decl. at ¶ 18; Ex. 6 to Masongsong Decl. (Mora Depo.) at 84:3-15. |
| | 110. | At approximately 1:32:40, Sgt. Wightman instructed the paramedics to stop staging and respond to Mr. Briones. | Ex. 7 to Masongsong Decl. (Wightman Depo.) at 39:20-40:4, Ex. 2 to Wightman Depo. (Wightman Report); Ex. 11 to Masongsong Decl. (Police Event) at page 2; Ex. 13 to Masongsong Decl. (Fire Event) at page 2. |
| | 111. | When the officers advised the paramedics to respond, Mr. Briones was already unresponsive. | Ex. 7 to Masongsong Decl. (Wightman Depo.) at 47:10-17, 48:24; Ex. 14 to Masongsong Decl. (Video) at 06:30-09:12; Ex. 17 to Masongsong Decl. (Match-Action) at 06:30-09:12. |
| | 112. | Sgt. Wightman instructed Officer Gonzales to turn Mr. Briones onto his side. | Ex. 7 to Masongsong Decl. (Wightman Depo.) at 33:12-20, 34:5-13, Ex. 2 to Wightman Depo. (Wightman Report). |

| | | |
|---|---|---|
| 113. | Even though the officers questioned whether Mr. Briones could breathe, they did not consider turning him onto his side until instructed to do so by Sgt. Wightman. | Ex. 7 to Masongsong Decl. (Wightman Depo.) at 33:12-20, 34:5-13, Ex. 2 to Wightman Depo. (Wightman Report); *See* Ex. 14 to Masongsong Decl. (Video) at 05:32-07:50 (no discussion of turning Mr. Briones onto his side within the approximate 2 minutes and 30 seconds after he was finally handcuffed); Ex. 17 to Masongsong Decl. (Match-Action) at 05:32-07:50. |
| 114. | Approximately six minutes and 40 seconds elapsed between Mr. Briones being taken to the ground and Mr. Briones being turned onto his side. | Ex. 14 to Masongsong Decl. (Video) at 01:20-08:00; Ex. 17 to Masongsong Decl. (Match-Action) at 01:20-08:00. |
| 115. | Within the approximate six minutes and 40 seconds between Mr. Briones being taken to the ground and Mr. Briones being turned onto his side, Mr. Briones was generally face and chest down. | Ex. 14 to Masongsong Decl. (Video) at 01:20-08:00; Ex. 17 to Masongsong Decl. (Match-Action) at 01:20-08:00; Ex. 4 to Masongsong Decl. (Brown Depo.) at 31:2-32:5. |
| 116. | Approximately two and a half minutes elapsed between Mr. Briones being finally handcuffed in a prone position and Mr. Briones being turned onto his side. | Ex. 14 to Masongsong Decl. (Video) at 05:26, 08:00; Ex. 17 to Masongsong Decl. (Match-Action) at 05:26-08:00; Ex. 2 to Masongsong Decl. (Morgan Depo.) at 48:10-12, |

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' PROPOSED STATEMENT OF UNCONTROVERTED
FACTS; PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| | | |
|---|---|---|
| | | 49:11-13 (testifying that after Mr. Briones was hobbled, he was still chest down for some period of time). |
| 117. | Approximately 30 seconds elapsed between Mr. Briones being finally hobbled in a prone position and Mr. Briones being turned onto his side. | Ex. 14 to Masongsong Decl. (Video) at 07:00-08:00; Ex. 17 to Masongsong Decl. (Match-Action) at 07:00-08:00. |
| 118. | For approximately two minutes after Mr. Briones was handcuffed, before the paramedics contacted Mr. Briones, Officer Morgan thought Mr. Briones was faking being passed out. | Ex. 2 to Masongsong Decl. (Morgan Depo.) at 45:15-46:15, 48:19-49:10, 57:18-59:5. |
| 119. | Approximately 20 seconds after he was turned on his side, Mr. Briones made a snoring sound. | Ex. 2 to Masongsong Decl. (Morgan Depo.) at 53:5-9; Ex. 4 to Masongsong Decl. (Brown Depo.) at 50:19-20, 58:5-8; Ex. 6 to Masongsong Decl. (Mora Depo.) at 58:16-25; Ex. 14 to Masongsong Decl. (Video) at 08:24-08:26; Ex. 17 to Masongsong Decl. (Match-Action) at 08:24-08:26. |
| 120. | Sometimes agonal (near death) muscle twitches, seizures mouth movements and snoring sounds are misinterpreted as continued resistance or evidence that the subject is doing fine medically. | O'Halloran Decl. at ¶ 26. |

| | | |
|---|---|---|
| 121. | The kicking Sgt. Cross described after Mr. Briones was fully handcuffed, when Mr. Briones seemed to stop resisting otherwise and was unresponsive (kicking that prompted continuing prone restraint with compression until hobbling was finished), was likely agonal seizure activity. | O'Halloran Decl. at ¶ 28. |
| 122. | Other than the snoring sound, which was likely agonal (near death) the officers found no evidence that Mr. Briones was breathing. | Ex. 6 to Masongsong Decl. (Mora Depo.) at 81:12-17; Ex. 14 to Masongsong Decl. (Video) at 08:24-08:26; |
| 123. | Officer Brown found that Mr. Briones had a pulse after Mr. Briones was turned onto his side. | Ex. 4 to Masongsong Decl. (Brown Depo.) at 59:22-60:12; Ex. 2 to Masongsong Decl. (Morgan Depo.) at 51:1-25. |
| 124. | The paramedics contacted Mr. Briones at approximately 1:34 a.m. | Ex. 12 to Masongsong Decl. (Pre-hospital Care Report) at page 2, "Patient Vitals." |
| 125. | It took the paramedics approximately one minute and twenty seconds to contact Mr. Briones after they were instructed to stop staging. | Ex. 11 to Masongsong Decl. (Police Event) at page 2 (1:32:40 a.m.); Ex. 12 to Masongsong Decl. (Pre-hospital Care Report) at page 2, "Patient Vitals" (1:34 a.m.); *see* Ex. 14 to Masongsong Decl. (Video) at 07:54, 08:03, 09:12; Ex. 17 to Masongsong |

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' PROPOSED STATEMENT OF UNCONTROVERTED FACTS; PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| | | |
|---|---|---|
| | | Decl. (Match-Action) at 07:54, 08:03, 09:12; *see* Ex. 2 to Masongsong Decl. (Morgan Depo.) at 54:1-3; *see* Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 55:2-23. |
| 126. | The handcuffs were not removed from Mr. Briones until the paramedics contacted Mr. Briones and asked the officers to remove the handcuffs. | Ex. 3 to Masongsong Decl. (Cross Depo.) at 81:21-25; 59:12-14. |
| 127. | When the paramedics contacted Mr. Briones, Mr. Briones had no pulse and was not breathing. | Ex. 12 to Masongsong Decl. (Pre-hospital Care Report) at page 2, "Patient Vitals." |
| **The Officer Defendants Acted Inappropriately** | | |
| 128. | Nothing in the record indicates that Mr. Briones posed a threat that would justify staging the paramedics. | Clark Decl. at ¶ 18, ¶ 24, ¶ 25. |
| 129. | Mr. Briones never verbally threatened anyone at any point during this incident, nor did he make any threatening gestures. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 29:17-19; Ex. 2 to Masongsong Decl. (Morgan Depo.) at 28:10-12;  Ex. 4 to Masongsong Decl. (Brown Depo.) at 30:10-12;  Ex. 6 to Masongsong Decl. (Mora Depo.) at 29:7-9;  Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 29:21-25, ; Clark Decl. at ¶ 18, ¶ 24, ¶ 25. |

| 130. | Mr. Briones did not punch, kick, hit, or strike anyone at any point during this incident. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 29:20-21; Ex. 2 to Masongsong Decl. (Morgan Depo.) at 28:19-21, 44:10-11; Ex. 3 to Masongsong Decl. (Cross Depo.) at 60:19-23; Ex. 4 to Masongsong Decl. (Brown Depo.) at 30:13-15; Clark Decl. at ¶ 18, ¶ 24, ¶ 25;  Ex. 1 to Masongsong Decl. (Nshaiwat Depo.) at 47:22-24; Ex. 10 to Masongsong Decl. (Cross Statement) at 12:22-24. |
| 131. | Mr. Briones was not violent or assaultive during this incident. | Clark Decl. at ¶ 18, ¶ 24, ¶ 25. |
| 132. | Sgt. Cross and Officers Brown, Mora, Gonzales, and Morgan lacked reasonable suspicion to detain Mr. Briones and lacked probable cause to arrest him. | Clark Decl. at ¶ 12. |
| 133. | Based on their observations that Mr. Briones was bleeding and had just been in a car accident, the officers would understand (per their training) that Mr. Briones would be disoriented and cognitively impaired as a result of the accident. Even taking the officers' account as true (that they suspected Mr. Briones to | Clark Decl. at ¶ 13. |

| | | | |
|---|---|---|---|
| | | be under the influence), then they would have contemplated that Mr. Briones' understanding and compliance would be altered, and should have adjusted their approach accordingly. | |
| | 134. | Nothing in the record indicates that Mr. Briones' vehicle was on fire or in danger of catching fire. | Clark Decl. at ¶ 14 |
| | 135. | When the paramedics were treating Mr. Briones, Officer Villalpando searched Mr. Briones' car for ID. | Ex. 8 to Masongsong Decl. (Villalpando Depo.) at 27:14-17, 29:11-17. |
| | 136. | At the time of his deposition, Officer Mora inaccurately stated that Mr. Briones' vehicle was "flaming." | Ex. 6 to Masongsong Decl. (Mora Depo.) at 34:20. |
| | 137. | It was inappropriate for Officers Mora and Gonzales to pull Mr. Briones out of the vehicle when the officers had information that Mr. Briones had been injured in the car accident. | Clark Decl. at ¶ 13. |
| | 138. | The officers should have instructed Mr. Briones to remain in his vehicle and wait for the paramedics, who were on their way to the scene. | Clark Decl. at ¶ 17 |
| | 139. | It was inappropriate for the officers to take Mr. Briones to the ground | Clark Decl. at ¶ 12, ¶ 13 ¶ 17, ¶ 22. |

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' PROPOSED STATEMENT OF UNCONTROVERTED FACTS; PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| | | |
|---|---|---|
| | when they had no information that Mr. Briones had committed any crime, no information that Mr. Briones was intoxicated, and no information that Mr. Briones was armed, especially considering the officers knew Mr. Briones had been injured in the car accident. | |
| 140. | Any resistance by Mr. Briones was minimal and did not justify the officers' use of force against him. | Clark Decl. at ¶ 24, ¶ 25. |
| 141. | Sgt. Cross' kneeling and/or standing on Mr. Briones was unreasonable and excessive. | Clark Decl. at ¶ 32, ¶ 33. |
| 142. | It was inappropriate for the officers to place weight and pressure on Mr. Briones' back. This violated training and standards that officers should not put weight or pressure on someone restrained in this fashion because it can make it more difficult for the subject to breathe. | Clark Decl. at ¶ 32, ¶ 33. |
| 143. | It is a national standard that police officers are trained (1) regarding positional and/or restraint asphyxia, (2) that prone body positions and certain methods of restraint can | Clark Decl. at  ¶ 28 |

| | | |
|---|---|---|
| | cause difficulty breathing and can result in death by asphyxia, (3) the risk for asphyxial death is compounded following a struggle with the officer, (4) the risk for asphyxia death is compounded by applying pressure to a suspect when the subject is in a chest and/or stomach down position, and (5) how to avoid certain methods of restraint, and safely restrain suspects, so as to prevent such death. Any respectable law enforcement agency would be expected to have this training. | |
| 144. | Police officers are trained that if a subject has difficulty breathing, they should immediately remove all restraints, including hobbles and handcuffs, and turn the subject onto his side or place him in a seated position, to help the subject breathe. Again, any respectable law enforcement agency would have this training. | Clark Decl. at ¶ 30 |
| 145. | The officers did not immediately remove the handcuffs from behind Mr. Briones or the hobble from his | Clark Decl. at ¶ 30. |

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' PROPOSED STATEMENT OF UNCONTROVERTED FACTS; PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| | | |
|---|---|---|
| | legs after they noticed he was unconscious, was possibly not breathing, and had become unresponsive. | |
| 146. | The record in this case indicates that the officers did not remove the handcuffs from Mr. Briones until instructed to do so by the paramedics, and did not remove the hobble. | Ex. 3 to Masongsong Decl. (Cross Depo.) at 81:21-25; Clark Decl. at ¶ 30. |
| 147. | The officer defendants collectively failed to intervene and/or stop the unnecessary and excessive restraint of and force inflicted on Mr. Briones by the other involved officers. | Clark Decl. at ¶ 35. |
| 148. | The record indicates that none of the officers sought medical treatment as a result of this incident. | Clark Decl. at ¶ 36 |
| **Officer Training with Respect to Positional and Restraint Asphyxia** | | |
| 149. | The OPD does not have any written training materials specifically pertaining to positional or restraint asphyxia and does not train its officers that positional or restraint asphyxia can occur. | Ex. 15 to Masongsong Decl. (PMK Depo.) at 25:8-11, 26:12-15, 35:1-6, 35:14-24. |
| 150. | The only policy the City has with respect to the risks to a person who is | Ex. 9 to Masongsong Decl. (Ontario Police Department Policy 306 - |

| | | | |
|---|---|---|---|
| 1 | | chest down for a prolonged period of time with weight on his back is Section 306.71(c)-(d) of the City of Ontario Police Department's written policy, "Guidelines for Use of Leg Restraints": | "Handcuffing and Restraints"); Ex. 15 to Masongsong Decl. (PMK Depo.) at 46:20-51:5. |

"Once secured, the person should be placed in a seated or upright position, secured with a seat belt, and shall not be placed on his/her stomach for an extended period, as this could reduce the person's ability to breathe."

"The restrained person should be continually monitored by an officer while in the leg restraint. The officer should ensure that the person does not roll onto and remain on his/her stomach."

| 151. | The OPD trains its officers to turn a subject onto his side or sit the subject up only after the subject is restrained. | Ex. 2 to Masongsong Decl. (Morgan Depo.) at 69:17-24; Ex. 3 to Masongsong Decl. (Cross Depo.) at 39:20-25 (testifying that OPD officers move a subject into a position that is not life threatening only after the subject has been handcuffed) and 40:11-14; Ex. 15 to Masongsong |

| | | |
|---|---|---|
| | | Decl. (PMK Depo.) at 37:5-15, 40:14-18. |
| 152. | The OPD does not train its officers that even before a person is handcuffed, restraining a person chest down for a prolonged period of time with weight on his back could affect the person's ability to breathe. | Ex. 15 to Masongsong Decl. (PMK Depo.) at 37:16-23; Clark Decl. at ¶ 38. |
| 153. | The OPD trains its officers to handcuff the subject prior worrying about turning the subject onto his side or placing the subject in a seated position. | Ex. 3 to Masongsong Decl. (Cross Depo.) at 37:13-16, 38:7-22 (testifying that OPD officers handcuff a subject before "worrying about other matters"); Ex. 2 to Masongsong Decl. (Morgan Depo.) at 69:17-24 (testifying that he is trained to turn the subject onto his side after the subject is handcuffed). |
| 154. | The City's PMK is responsible for coordinating all training. | Ex. 15 to Masongsong Decl. (PMK Depo.) at 18:9-16, 35:14-24. |
| 155. | The City's PMK believes positional and restraint asphyxia is a "rumor" or "buzz word." | Ex. 15 to Masongsong Decl. (PMK Depo.) at 26:11-15, 27:5-10. |
| 156. | The City does not train its officers with respect to the "physiology of a struggle," in other words, that if a person is chest down with weight on his back, the person could be | Ex. 15 to Masongsong Decl. (PMK Depo.) at 29:1-31:3. |

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' PROPOSED STATEMENT OF UNCONTROVERTED FACTS; PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| | | |
|---|---|---|
| | | attempting to lift up to assist in their breathing, and the officer perceives this as resistance and pushes the person back down. | |
| 157. | The OPD does not train its officers (including not having any written training materials) that placing weight on a subject's back when the subject is in a face and chest down position for a prolonged period of time can interfere with the subject's ability to breathe. | Ex. 3 to Masongsong Decl. (Cross Depo.) at 37:9-17 (testifying that the focus is taking the person into custody), 39:1-9 (testifying that the concern is getting the person handcuffed, as opposed to being concerned about weight on the subject's back), 44:24-45:8 (testifying that he has no training that weight applied to the back of a person who is chest down before the person is handcuffed can make it difficult for the person to breathe); Ex. 15 to Masongsong Decl. (PMK Depo.) at 28:21-25. |
| 158. | The City does not train its officers (including not having any written training materials) leaving a person in a prone position for an extended period of time could affect the person's ability to breathe. | Ex. 15 to Masongsong Decl. (PMK Depo.) at 28:14-20. |

| | | |
|---|---|---|
| 159. | Other than a single incident during field training, Officer Mora does not recall receiving any training from the OPD that an officer should turn a subject from a prone position onto his side to make it easier for the subject to breathe. | Ex. 6 to Masongsong Decl. (Mora Depo.) at 88:15-24, 91:14-16; 93:8-12. |
| 160. | Officer Mora does not recall receiving any training on positional or restraint asphyxia from the OPD. | Ex. 6 to Masongsong Decl. (Mora Depo.) at 89:2-25. |
| 161. | Officer Mora does not recall receiving any training from the OPD that even if the subject is not hobbled, if the subject is in a prone position for a prolonged period of time, that could interfere with the subject's ability to breathe. | Ex. 6 to Masongsong Decl. (Mora Depo.) at 91:17-21 |
| 162. | Officer Mora doesn't recall specific training that if an individual is chest down for a prolonged period of time and there is weight applied to the person's back, that could affect the person's ability to breathe. | Ex. 6 to Masongsong Decl. (Mora Depo.) at 91:22-92:1. |
| 163. | Officer Brown has had training that one of the reasons to put a suspect on his side (as opposed to chest down) | Ex. 4 to Masongsong Decl. (Brown Depo.) at 61:20-25 |

| | | | |
|---|---|---|---|
| 1 2 | | is to assist the airway and allow the suspect to breathe more easily. | |
| 3 4 5 6 7 8 9 10 | 164. | Gonzales did have training with the OPD that placing a suspect in a prone position for a prolonged period of time with weight applied to hold the suspect down would interfere with the suspect's ability to breathe and could potentially cause the suspect to die. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 59:24-60:8 |
| 11 12 13 14 15 16 17 18 | 165. | Following the incident with Mr. Briones, the OPD did not provide or facilitate any discussions, debriefing, or retraining with respect to not putting weight on a subject's back and not leaving a subject in a prone position for an extended period of time. | Ex. 6 to Masongsong Decl. (Mora Depo.) at 96:2-17. |
| 19 20 21 22 | 166. | Officers are generally trained that obesity makes a person more susceptible to positional and restraint asphyxia. | Clark Decl. at ¶ 37. |
| 23 24 25 26 27 | 167. | The OPD does not provide training with respect to risk factors that make a person more susceptible to positional and restraint asphyxia, such as obesity. | Ex. 5 to Masongsong Decl. (Gonzales Depo.) at 60:17-21 (testifying that he doesn't recall any training on risk factors for susceptibility to positional |

28

| | | | |
|---|---|---|---|
| | | | and restraint asphyxia such as obesity). |
| 168. | The OPD utterly failed to properly train their personnel regarding the required response to medical emergencies and also with respect to the required procedures to avoid positional and/or restraint asphyxia injuries and deaths | Clark Decl. at ¶ 38. | |
| **The Death** | | | |
| 169. | Ronald O'Halloran, M.D. is of the opinion that Kyle Briones ultimately died from restraint asphyxia with compression. The asphyxia caused loss of consciousness, respiratory arrest and, finally, cardiac arrest. The ultimately fatal asphyxia occurred during a struggle with and prone restraint procedures by Ontario police officers. | O'Halloran Decl. at ¶ 17. | |
| 170. | The probable trigger for Mr. Briones' asphyxial death was likely the effects of the way he was restrained prone and compressed by the pressure on his back the officers. | O'Halloran Decl. at ¶ 17. | |
| 171. | The presence of a pulse after Mr. Briones went unresponsive indicates | O'Halloran Decl. at ¶ 31. | |

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' PROPOSED STATEMENT OF UNCONTROVERTED FACTS; PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| | | |
|---|---|---|
| | that a cardiac arrhythmia did not cause the loss of consciousness and the loss of breathing that led directly to Mr. Briones' death; rather, the fact that he had a pulse after he went unresponsive and stopped breathing supports death by restraint asphyxia. | |
| 172. | Mr. Briones did not die because of "excited delirium syndrome." | O'Halloran Decl. at ¶ 34. |
| 173. | Had Mr. Briones not been restrained the way he was on the day of the incident, he would not have died. | O'Halloran Decl. at ¶ 35 |
| 174. | Mr. Briones' death certificate would more accurately be certified as follows:<br><br>Cause of Death: Asphyxia during prone restraint with compression by police officers (restraint asphyxia)<br>Other significant conditions (contributing to cause of death but not related to above cause): Obesity and hypertensive heart disease<br>Manner of death: Homicide | O'Halloran Decl. at ¶ 36. |

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' PROPOSED STATEMENT OF UNCONTROVERTED
FACTS; PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| | | How injury occurred: Subject was restrained prone with chest compression and obstruction of external airway by multiple police officers. | |
|---|---|---|---|
| | 175. | It should be noted that Mr. Briones' toxicology report clearly establishes that Mr. Briones did not have any amount of alcohol, methamphetamine, or any other illicit drug or substance in his system at the time of his death. | O'Halloran Decl. at ¶ 37 |

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' PROPOSED STATEMENT OF UNCONTROVERTED FACTS; PLAINTIFFS' ADDITIONAL MATERIAL FACTS